UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| R3 COMPOSITES CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counter Defendant, | ) | |
| | ) | |
| v. | ) | Cause No. 1:16-cv-00387-HAB-SLC |
| | ) | |
| G&S SALES CORP., | ) | |
| | ) | |
| Defendant/Counter Claimant. | ) | |

**OPINON AND ORDER**

Before the Court is a Motion for Leave to File Supplemental Complaint filed by Plaintiff

R3 Composites Corporation ("R3") on July 24, 2020 (ECF 81), requesting leave to file a

supplemental complaint (ECF 81-2). Defendant G&S Sales Corporation ("G&S") filed a

response and memorandum in opposition on August 7, 2020. (ECF 84, 85). R3 filed a reply on

August 14, 2020. (ECF 86). G&S then successfully moved for leave to file a sur-reply (ECF 87,

101), which it did on October 14, 2020 (ECF 102). R3 filed a sur-response on October 21, 2020.

(ECF 103). Accordingly, the matter is fully briefed and ripe for adjudication.

Also before the Court is a Motion to Intervene filed by MDG Sales Corporation

("MDG") on August 27, 2020 (ECF 90), requesting the Court's permission to file an intervening

complaint against G&S (ECF 90-1). G&S filed a response and memorandum in opposition to

MDG's motion on September 7, 2020 (ECF 93, 94), to which MDG filed a reply on September

14, 2020 (ECF 97). Similarly, R3 filed a response to MDG's motion on September 10, 2020

(ECF 96), to which MDG filed a reply on September 17, 2020 (ECF 99). Therefore, the motion

to intervene is also fully briefed.

Because the two motions (ECF 81, 90) are interrelated, the Court will resolve them both. For the forgoing reasons, both R3's motion for leave to file a supplemental complaint (ECF 81) and MDG's motion to intervene (ECF 90) will be DENIED.

## A. Background

This case arises from a contract dispute regarding sales commissions between R3 and G&S. (ECF 5). The Seventh Circuit Court of Appeals has already detailed much of the factual history relevant to this matter. *See R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935 (7th Cir. 2020). To briefly summarize, though, R3 is a manufacturer of custom fiberglass parts located in Grabill, Indiana. (ECF 5 ¶¶ 1, 5). In late 2010 or early 2011, R3's president approached Steven Stefani to find potential customers for R3. (ECF 85 at 2). Stefani, in turn, contacted a business associate, Mark Glidden. (*Id.*; ECF 90-1 ¶ 4).

Stefani and Glidden subsequently decided to form G&S—a Michigan corporation—to act as a sale representative for R3. *R3 Composites*, 960 F.3d at 937. The sole shareholders of G&S were Stefani and his wife—no shares of G&S were ever issued to Glidden. (ECF 85 at 4-5; ECF 85-2 at 2; ECF 93-6 ¶¶ 9-10). Rather, G&S paid Glidden's alleged share of the sales commissions to MDG—a separate Michigan corporation of which Glidden was the sole shareholder and officer. (ECF 81 ¶¶ 21-22; ECF 85 at 7-8; ECF 90 ¶ 7; ECF 93-6 ¶ 15). MDG, though, was automatically dissolved by operation of Michigan law on July 15, 2015, after it failed to file its statutorily required annual reports. (ECF 86 at 3-4; ECF 86-4; ECF 99 at 1-2); *see* Mich. Comp. Laws § 450.1922. Prior to that, in June 2011, R3 hired Glidden as a plant manager while he was still working with G&S. (ECF 85 at 6). Following a disagreement regarding the amount of commissions owed, the relationship between R3 and G&S broke down, leading to the present suit. *R3 Composites*, 90 F.3d at 938-39.

On October 21, 2016, R3 filed a declaratory judgment action in the Allen County Circuit Court seeking a determination that it had paid all sales commissions owed to its former sales representative, G&S.  (ECF 5).  G&S removed the case to this Court on November 14, 2016 (ECF 1), and filed counterclaims for breach of contract, exemplary damages, and fees under the Indiana Sales Commission Act (ECF 3).  In August 2018, R3 moved for summary judgment on thirteen distinct issues.  (ECF 37).  In February 2019, then Chief Judge Theresa Springmann granted summary judgment on one of the issues but denied summary judgment as to the remaining twelve.  (ECF 53).  Both parties subsequently filed separate motions for reconsideration.   (ECF 55, 60).  The case was transferred to Judge Holly Brady who ultimately granted R3's motion and entered judgment for R3 on all claims.  (ECF 67-69).  G&S also filed a motion for leave to file a second amended counterclaim (ECF 57), which Judge Brady denied (ECF 68).  After a timely appeal by G&S (ECF 70), however, the Seventh Circuit remanded the matter to this Court finding that the entry of summary judgment was erroneous.  *R3 Composites*, 960 F.3d at 946; (ECF 79).

On June 28, 2019, shortly before G&S appealed Judge Brady's Order, Glidden and R3 entered into a separation agreement wherein Glidden allegedly assigned all of his interests in any recovery derived from this litigation to R3.  (ECF 81 ¶¶ 4-5; ECF 81-2 ¶¶ 2-3).  R3 now seeks leave to supplement its complaint to assert "the rights of Glidden, as assigned to R3, to receive 50% of any commissions and other recovery obtained by G&S against R3 in this litigation, if any." (ECF 81 ¶ 21).  G&S opposes the motion on the grounds that it would unduly delay the resolution of the current lawsuit, and that the additional issues would be moot if R3 were to prevail on its claim.  (ECF 85 at 15-16).  Specifically, G&S alleges that the proposed supplemental complaint would necessitate additional discovery into the existence and terms of

the agreement between G&S and MDG or Glidden and would require that MDG or Glidden be added as parties. (*Id.* at 18-19). G&S further asserts that the motion should be denied because if MDG were to be added as an indispensable party, it would destroy diversity jurisdiction as both G&S and MDG are Michigan corporations. (*Id.* at 21-25). In its reply, R3 asserts that its motion is timely because the termination agreement—and thus the assignment of Glidden's rights—did not occur until shortly before this case was on appeal. (ECF 86 at 1). Further, R3 asserts that MDG would not be an indispensable party because all proceeds would flow to Glidden as the sole shareholder, and in any event, MDG's interests had already flowed to Glidden as a result of MDG's dissolution under Michigan Law. (*Id.* at 4-5).

During the pendency of R3's motion, G&S filed a separate declaratory judgment action in Michigan state court (the "Wayne County case") on August 6, 2020, to determine what, if anything, it owes Glidden or MDG. (ECF 95 at 3; *see also* ECF 94 at 19). Presumably in response to that case, MDG filed its missing reports, renewing its corporate existence under Michigan Law. (ECF 87-1; ECF 87-2; ECF 99 at 1-2; ECF 102 at 1); *see* Mich. Comp. Laws § 450.1925. G&S subsequently sought (ECF 87) and received the Court's leave to file a sur-reply (ECF 101), informing the Court that MDG had since come back into being (ECF 102).

While G&S's motion for leave to file a sur-reply was pending, MDG filed its motion to intervene asserting that it was in fact owed fifty percent of any damages arising from commissions which might be awarded to G&S in this action. (ECF 90 ¶¶ 5, 9). Pertinently, MDG's proposed complaint seeks a declaratory judgment, and alleges breach of contract and unjust enrichment claims against G&S—not R3. (ECF 90-1). MDG explained that it did not seek leave to intervene sooner because it had assumed that its interests were being adequately represented by G&S. (ECF 90 ¶ 16).

4

G&S opposes the motion to intervene on the grounds that it is untimely and that any agreement between G&S and Glidden/MDG is factually distinct from the agreement between R3 and G&S.  (ECF 94 at 16-17).  As to untimeliness, G&S argues that MDG should have been aware that G&S did not believe it owed any sales commissions to MDG years ago.  (*Id.* at 12-13).  In particular, G&S points to a November 2017 letter sent from an attorney retained by Glidden, conveying Glidden's belief that he had a personal interest in the litigation and that he likely qualifies as an indispensable party.  (ECF 94-14).  Additionally, G&S points to its subsequent declaratory judgment action against Glidden in the Eastern District of Michigan in 2017, in which G&S alleged that it did not owe Glidden a share of the sales commissions.[1]  (ECF 94 at 15).

R3 also opposes the motion to intervene on the grounds that it is premature until R3 supplements its complaint.  (ECF 96 at 1).  R3 notes, however, that were it granted leave to file its supplemental complaint it would not oppose the intervention of MDG, nor the remand of the case to the Allen County Circuit Court where it was initially filed.  (*Id.* at 6-7).

In its reply, MDG asserts that its motion is timely because the 2017 case only concerned the rights of Glidden as an individual.  (ECF 97 at 1-2).  MDG, as a separate entity, was not on notice that its rights were not adequately represented by G&S until the Michigan state case was filed.  (*Id.*).  Further, MDG asserts that it would be prejudiced by denial of the motion to intervene because G&S would be able to settle its claims as to R3, without any regard to the rights of MDG.  (*Id.* at 3-4).  MDG also contends that Glidden's assignment to R3 does not affect MDG's rights, and that because MDG is now again a corporation in good standing with the state of Michigan, its rights never flowed to Glidden.  (ECF 99).

---

[1] That case was later dismissed for lack of personal jurisdiction before reaching the substance of either party's claims.  (*Id.*).

## B.  Motion to Supplement Complaint

### 1.  Legal Standard

As to the motion to supplement complaint, Federal Rule of Civil Procedure 15(d)

provides:  "On motion and reasonable notice, the [C]ourt may, on just terms, permit a party to

serve a supplemental pleading setting out any transaction, occurrence, or event that happened

after the date of the pleading to be supplemented."  "[D]istrict courts have broad discretion in

granting or denying a motion to supplement a complaint under Rule 15(d)."  *United States v.*

*Indiana*, No. 296-CV-095, 2009 WL 3067087, at *3 (N.D. Ind. Sept. 18, 2009).  The standard to

supplement a complaint under Rule 15(d) is the same as to amend a complaint under Rule 15(a).

*See Glatt v. Chi. Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996).  Accordingly, factors for the Court

to consider include whether "there is undue delay, bad faith, dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the [supplement], or futility of the

[supplement]."  *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (citing *Villa v. City of*

*Chi.*, 924 F.2d 629, 632 (7th Cir. 1991)).  "While delay in itself does not constitute a sufficient

basis for denying a motion to amend, the longer the delay, the greater the presumption against

granting leave to amend."  *Id.* (citation and internal quotation marks omitted).

"Undue prejudice occurs when the [supplement] 'brings entirely new and separate claims,

adds new parties, or at least entails more than an alternative claim or a change in the allegations

of the complaint' and when the additional discovery is expensive and time-consuming."  *In re*

*Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 2015) (quoting *A. Cherney Disposal Co. v. Chi.*

*& Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385 (N.D. Ill. 1975)).  As such, the Court

must balance the hardship to the moving party if the motion is denied and the supposed injustice

to the nonmoving party should the motion be granted.  *Id.* (citing 6 Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 1487 (2d ed. 1990)).

*2.  Discussion*

Turning to R3's motion, the Court is not persuaded that R3 should be permitted to

supplement its Complaint.  As an initial matter, the Court notes that the deadline for the parties

to amend their pleadings passed on March 31, 2017.  (ECF 11, 13).   Therefore, R3 must first

show "good cause" for the belated proposed amendment under Federal Rule of Civil Procedure.

Rule16's "good cause" standard focuses primarily on the moving party's diligence in seeking

leave to amend or supplement its complaint.  *See* Fed. R. Civ. 16(b)(4); *Adams v. City of*

*Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014); *Trustmark Ins. Co. v. Gen. & Cologne Life Re*

*of Am.*, 424 F.3d 542, 553 (7th Cir. 2005).

In an attempt to show good cause, R3 emphasizes that it did not enter into the separation

agreement with Glidden until June 28, 2019 (ECF 81 ¶¶ 4-5; ECF 81-2 ¶ 2), less than two weeks

before G&S filed its notice of appeal (ECF 70), and the case was not remanded to this Court

until July 7, 2020.  (ECF 79).  As such, R3 states that it waited less than three weeks to seek to

supplement its complaint after the matter was remanded.  But even if R3 was diligent in seeking

to assert its rights acquired through the separation agreement—almost three years into this

litigation—it ultimately does not matter because the motion still fails under Rule 15.

To explain, the motion will be denied because G&S would be unduly prejudiced if R3

were permitted to file its supplemental complaint.  To begin, the late stage of these proceedings

weighs heavily against R3's motion.  *See Gravel Trucking Co. v. Beelman Truck Co.*, No. 2:11-

CV-00490-JTM-APR, 2014 WL 12781293, at *3 (N.D. Ind. Oct. 6, 2014) ("A motion to amend

or supplement is more likely to be denied if it takes place at a relatively late stage in the

proceedings."); *A. Cherney Disposal Co.*, 68 F.R.D. at 385 ("Prejudice is generally found in cases characterized by some or all of the following circumstances: The motion comes on the eve of trial after many months or *years of pretrial activity* . . . ." (emphasis added)). This case was filed over four years ago, and discovery has been closed for more than two years. (ECF 1, 34, 35). Dispositive motions have already been filed (ECF 37), ruled upon (ECF 53), reconsidered (ECF 68), appealed (ECF 70), and reversed (ECF 79). Allowing R3 to file its supplemental complaint would—as R3 admits—require at least some additional discovery (*see* ECF 86 at 4), as well as perhaps additional dispositive motions, which will further delay the ultimate resolution of this matter.

Significantly, this is not an instance where R3 is simply seeking to advance a new legal theory. Rather, the rights that R3 seeks to assert against G&S arise out of two separate contracts not currently at issue in this case—the separation agreement between Glidden and R3 and the agreement between G&S and Glidden/MDG. Thus, even if G&S were to prevail on the existing claims, it would then have to further litigate the scope and enforceability of not only its agreement with MDG or Glidden, but also Glidden's separation agreement with R3. *See Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) ("If amendment were permitted, Methodist's success in defeating all the claims in the second amended complaint would not end the lawsuit, and it would have to engage in a new contest on different issues— four years after the action was started."). While R3 asserts that it would be more efficient to resolve these matters in a single proceeding (*see* ECF 86 at 6), adding a potentially superfluous issue at this stage of the litigation is not necessarily a wise use of judicial resources, *see Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 1:04-CV-396 TS, 2006 WL 3833358, at *3 (N.D. Ind. Dec. 18, 2006) (denying a motion seeking to amend a complaint to add a claim

which was already pending in a parallel declaratory judgement action, in part because it would complicate the issues in the case, explaining that: "[c]ontrary to the Plaintiff's suggestion, including the two claims in one lawsuit would hinder judicial economy and efficiency").

Furthermore, the issues raised by Glidden's alleged assignment are not altogether straightforward.  On the one hand, R3 observes that under Michigan law, a former corporation's assets pass to its "shareholders as beneficial owners once liquidation and winding up is complete and all creditors have been satisfied." *Flint Cold Storage v. Dep't of Treasury*, 776 N.W.2d 387, 397 (Mich. Ct. App. 2012).  At the same time, MDG emphasizes in its reply to R3's response to the motion to intervene that upon filing its delinquent annual reports, "the rights of the corporation shall be the same as though a dissolution or revocation had not taken place[.]"  Mich. Comp. Laws § 450.1925(2); (*see* ECF 99 at 1-2).  As such, another issue which would ultimately need to be resolved is whether—under Michigan law—MDG had wound up its affairs during the nearly four years between its automatic dissolution and when Glidden entered into the separation agreement.  *See Tax Increment Fin. Auth. v. Liberty Mut. Ins. Co.*, 771 F. Supp. 2d 791, 795 (E.D. Mich. 2011) ("There is little in the way of Michigan case law that provides guidance in deciding what constitutes a reasonable time for a corporation to wind up its affairs."); *but see Act 1 Grp, Inc. v. Alternative Care Staffing, Inc*, No. 13–CV–13397, 2013 WL 6191077, at *2 (E.D. Mich. Nov. 26, 2013) (finding four years since the automatic dissolution of a Michigan corporation was a reasonable amount of time for winding up affairs).  The supplemental complaint, then, would not only require discovery to be reopened but would also likely confuse the issues of this case, resulting in further delay.[2]  *See Lincoln Nat'l Life Ins. Co.*, 2006 WL

---

[2] R3's supplemental complaint also risks adding additional legal complexities to this case—specifically the scope of § 450.1925 as it relates to the transfer of rights and assets following dissolution—which have not been clearly resolved by Michigan courts.  The Michigan Court of Appeal's opinion in *Woodbury v. Res-Care Premier, Inc.*, could be instructive.  *See* 814 N.W.2d 308, 318 (2012) ("[Michigan law] provides a retroactive *legal* existence to a

3833358, at *3 ("Regardless of the good cause consideration, there is another reason why the Court may not permit the amendments: they would confuse the case. . . .  Worse yet, the jurors would be the ones who would have to bear the brunt of the complexities.  This situation would cause undue delay that would extend beyond the delay that appears to be inevitable once discovery begins."); *Eazypower Corp. v. ICC Innovative Concepts Corp.*, No. 98 C 3189, 2002 WL 31473813, at *1 (N.D. Ill. Nov. 1, 2002) (denying a motion to amend, in part, because the amended complaint would complicate the issues of the case).

In summary, given that discovery has long since closed, that dispositive motions were ruled upon, the length of time this suit has been pending, and the additional complexities and confusion the supplemental complaint would likely cause at trial, G&S would be unduly prejudiced if R3's supplemental complaint were to proceed.  Therefore, R3's motion for leave to file its proposed supplemental complaint will be DENIED.[3]  The Court will now turn to MDG's motion to intervene.

---

corporation even though, at that moment in the past, *factually*, the corporation had no such existence."), *judgment vacated, appeal dismissed,* 843 N.W.2d 746 (Mich. 2014).  But that opinion was vacated by the Michigan Supreme Court after the parties settled the matter while it was on appeal.  *Woodbury*, 843 N.W.2d 746 (Mich. 2014); *see also Anesthesia Servs. Affiliates v. City of Detroit*, No. 344317, 2019 WL 6249316, at *4 (Mich. Ct. App. Nov. 21, 2019) ("What is clear, however, is that the court vacated the majority opinion, meaning plaintiffs cannot rely on it as precedential."), *appeal denied,* 944 N.W.2d 697 (Mich. 2020).  While not necessarily prejudicial to the parties, the Court is hesitant to wade into unresolved matters of state law if unnecessary.  *See Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir. 1987) ("We write only to emphasize that our policy will continue to be one that requires plaintiffs desirous of succeeding on novel state law claims to present those claims initially in state court."); *see also Ry. Express Agency, Inc. v. Super Scale Models, Ltd.*, 934 F.2d 135, 138 (7th Cir. 1991) ("Indeed, more recent opinions of this court have strongly encouraged district courts to dismiss actions based on novel state law claims.").

[3] It is worth noting that G&S also asserts that R3's supplemental claim "lacks merit," suggesting that the R3's motion should be denied on futility grounds.  (ECF 85 at 20).  "[F]utility, in the context of Rule 15, refers to the inability to state a claim, not the inability of the plaintiff to prevail on the merits."  *Reardon v. Short-Elliott Hendrickson, Inc.*, No. 2:17-CV-154-JFB-PRC, 2018 WL 1603381, at *2 (N.D. Ind. Apr. 3, 2018) (citation omitted)).  "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend . . . ."  *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 520-21 (7th Cir. 2015) (citation and quotation marks omitted).  Here, the proposed supplemental complaint would cause G&S undue prejudice but does not appear to be futile on its face.

### D.  Motion to Intervene

<u>1.  Legal Standard</u>

As to the motion to intervene, Federal Rule of Civil Procedure 24(a) states that:

> on timely motion, the court must permit anyone to intervene who .
> . . claims an interest relating to the property or transaction that is
> the subject of the action, and is so situated that disposition of the
> action may as a practical matter impair or impede the movants
> ability to protect its interest, unless existing parties adequately
> represent that interest.

Accordingly, a party moving to intervene pursuant to Rule 24(a) "must show (1) timeliness; (2)

an interest relating to the subject matter of the main action; (3) at least potential impairment of

that interest if the action is resolved without the intervenor; and (4) lack of adequate

representation by existing parties." *Woodring v. Culbertson*, 227 F.R.D. 290, 292 (N.D. Ind.

2005) (citation omitted).  The timeliness requirement is "essentially . . . a reasonableness

standard:  potential intervenors need to be reasonably diligent in learning of a suit that might

affect their rights, and upon so learning they need to act reasonably promptly." *Id.* (alteration in

original) (quoting *Nissei Sangyo Am., Ltd. v. U.S.*, 31 F.3d 435, 438 (7th Cir. 1994)).  "The

applicant has the burden of proving each of the four elements of intervention as of right; the lack

of one element requires that the motion to intervene be denied." *Keith v. Daley*, 764 F.2d 1265,

1268 (7th Cir. 1985).

<u>2.  Discussion</u>

As mentioned, R3 does not oppose MDG's motion to intervene in principle—instead

arguing that it is premature until R3 files its supplemental complaint.  (ECF 96).  G&S, however,

maintains that MDG's motion is untimely and that MDG lacks a sufficient interest in the

underlying litigation.  (ECF 94 at 17).  Further, in response to R3's motion seeking leave to file

its supplemental complaint, G&S opposes the potential joinder of MDG under Federal Rule 19

because it would destroy diversity of citizenship among the parties—depriving the Court of

subject-matter jurisdiction  (ECF 85 at 21-25).  Accordingly, G&S maintains that MDG should

not be allowed to intervene pursuant to Rule 24 or be joined as an indispensable party pursuant

to Rule 19.

As the Court already briefly explained *supra*:

> Pursuant to Rule 24(a)(2), a petitioner must meet four criteria to
> intervene as of right: (1) timely application; (2) an interest relating
> to the subject matter of the action; (3) potential impairment, as a
> practical matter, of that interest by the disposition of the action;
> and (4) lack of adequate representation of the interest by the
> existing parties to the action.

*Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (citation and internal quotation

marks omitted).  "The failure to meet any one factor dictates denial of the petition."  *Id.* (citing

*United States v. City of Chi.*, 908 F.2d 197, 199 (7th Cir. 1990)).

The interest factor under Rule 24 and Rule 19 are substantially similar.  *See* Fed. R. Civ.

P. 19(a)(1)(B); Fed. R. Civ. 24(a)(2); *see also* Fed. R. Civ. P. 24 advisory committee's note to

1966 amendment ("Intervention of right is here seen to be a kind of counterpart to Rule

19[(a)(1)(B)] on joinder of persons needed for a just adjudication:  where, upon motion of a party

in an action, an absentee should be joined so that he may protect his interest which as a practical

matter may be substantially impaired by the disposition of the action, he ought to have a right to

intervene in the action on his own motion.").

Per Rule 24(a), "[t]he 'interest' asserted must be 'direct and concrete' and 'accorded

some degree of legal protection.'"  *Gen. Ins. Co. of Am. v. Clark Mali Corp.*, No. 08 C 2787,

2010 WL 807433, at *3 (N.D. Ill. Mar. 10, 2010) (quoting *Diamond v. Charles*, 476 U.S. 54, 75

(1986)).  "[A] mere economic interest is not enough."  *Flying J. Inc. v. Van Hollen*, 578 F.3d 569

(7th Cir. 2009) (internal quotation marks omitted) (collecting cases).  In other words, "the fact

that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit—maybe you're a creditor of one of them—does not entitle you to intervene in their suit." *Id.* (collecting cases).

Here, it should be noted that MDG is only bringing suit against G&S—not R3. (*See* ECF 90-1). But MDG's interest *vis-à-vis* G&S is merely an economic interest. Indeed, as its motion to intervene makes clear—much like a creditor of one of the parties—MDG is only seeking to protect its own ability to potentially collect a judgment against G&S. (*See* ECF 90 ¶ 14). In other words, this appears to be an instance where "a third party who has some outstanding monetary claim from one of the parties attempts to intervene to ensure that the outcome of the case preserves as much of its claim as possible." *Reich,* 64 F.3 at 322; *see also Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204-05 (7th Cir. 1982). Accordingly, MDG does not have sufficient interest in this litigation for purposes of Rule 24(a). For much the same reasons, MDG does not have a sufficient interest in this litigation to qualify as an indispensable party under Rule 19(a). That MDG may need to bring a subsequent suit against R3 or MDG is simply not enough. *See Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 505 (7th Cir. 1980) ("In any event, the prospect of further litigation between Pasco and Croxford is not sufficiently significant to make Croxford an indispensable party.").

Arguably, MDG has a stronger interest in this suit as it relates to Glidden's alleged assignment to R3, but again, MDG is not attempting to bring any claims against R3 or apparently challenging the validity of the separation agreement. For the reasons discussed *supra*, R3 will not be permitted to raise its claims stemming from Glidden's alleged assignment in this action. In any event, the scope and enforceability of the separation agreement is a dispute concerning Glidden and R3—not MDG. *See Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington*

*Rd. Holdings, L.L.C.,* 717 F. Supp. 2d 724, 737 (E.D. Mich) ("[A third-party] may not challenge

the validity of assignments to which it was not a party or third-party beneficiary, where it has not

been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their

validity."), *aff'd sub nom. Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd.*

*Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010); *see also* 7 Charles Alan Wright & Arthur R.

Miller, *Federal Practice and Procedure* § 1613 (3d ed. 2019) ("An assignor of rights and

liabilities under a contract generally is not a required party in a suit brought by the assignee.

Indeed, in most cases the assignor would not even be a proper party inasmuch as the assignor

may have lost the right to bring an independent action on the contract by virtue of the

assignment." (footnotes omitted)).

Still more, it is hard to see how MDG's interests would not be adequately represented in

this action by G&S—especially considering that R3 will not be permitted to file its supplemental

complaint.  Both MDG and G&S seek to have R3 pay the sales commissions G&S allegedly

earned under the parties' supposed contract—G&S for its own sake and MDG so it could

subsequently recover from G&S.  "Where a prospective intervenor has the same goal as the party

to a suit, there is a presumption that the representation in the suit is adequate."  *Shea v. Angulo*,

19 F.3d 343, 347 (7th Cir. 1994).  Again, MDG's fear that G&S may settle this suit is not enough

to warrant intervention as a matter of right.  *See U.S. Sec. Exch. Comm'n v. Benger*, No. 09 C

0676, 2010 WL 724416, *5 (N.D. Ill. Feb. 23, 2010) ("It is impossible to forecast events still in

the womb of time, and neither hypothesis nor speculation is ever a substitute for proof. . . . [T]he

possibility that the parties may settle does not alone warrant intervention.").

Most pertinently, though, MDG's motion to intervene is untimely.  Rule 24's "timeliness

requirement . . . essentially means that an intervenor must 'act with dispatch' . . . ."  *Nissei*, 31

F.R.D. at 438 (quoting *Atl. Mut. Ins. Co. v. Nw. Airlines, Inc.*, 24 F.3d 958, 960 (7th Cir. 1994)). In other words, "[i]ntervention is unavailable to the litigant who 'dragged its heels' after learning of the lawsuit." *Id.* (quoting *United States v. City of Chi.*, 870 F.2d 1256, 1263 (7th Cir. 1989)). Again, the four factors considered by the Court are: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003) (alteration in original) (citation and internal quotation marks omitted). "Determining whether an application to intervene is timely is committed to the sound discretion of the district court." *Shea*, 19 F.3d at 349. In the same vein, a party may only permissively intervene under Rule 24(b), "again upon [a] timely application." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). "Permissive intervention under Rule 24(b) is wholly discretionary and will be reversed only for abuse of discretion." *Id.*

Turning to the length of time factor, G&S contends—unsurprisingly—that MDG's motion is untimely because it waited nearly four years after R3 first filed its complaint in this case. (ECF 94 at 16). Similarly, G&S points to its previously filed action against Glidden in the Eastern District of Michigan as evidence that MDG should have been aware that its interests were not adequately represented in this case by G&S as early as December 2017. (*Id.* at 18). MDG, however, asserts that it was not aware that G&S contested whether sales commissions were owed to MDG—as opposed to Glidden individually—until G&S filed the Wayne County case on August 6, 2020. (ECF 97 at 2). MDG maintains that it was diligent, seeking to intervene only twenty-one days after learning its rights may be affected by the current litigation. *Id*.

15

MDG's explanation of why it waited to intervene in this matter is unpersuasive.  While MDG emphasizes that it has a unique corporate identity separate from Glidden, it does not otherwise explain why it would have been unaware that its interests could be affected by this litigation.  As already mentioned, Glidden was clearly contemplating intervening in this case as early as 2017.  (*See* ECF 94-14).  It was equally as clear in 2017 that G&S did not believe—or was at least willing to contest—that it owed any sales commissions to Glidden.  (ECF 94-15).  Given, then, that Glidden is MDG's "sole shareholder and officer" (ECF 90 ¶ 7), it is hard to believe that MDG was unaware that G&S would dispute that it owed MDG a share of any recovery in this matter, *see Copeman Labs. Co. v. Gen. Motors Corp.*, 36 F. Supp. 755, 762 (E.D. Mich. 1941) ("The knowledge possessed by a corporation about a particular thing is the sum total of all the knowledge which its officers and agents, who are authorized and charged with the doing of the particular thing acquire, while acting under and within the scope of their authority.").  In other words, this was clearly not a situation where MDG could have reasonably believed for more than two years that it "could not have legitimately petitioned to intervene." *Reich*, 64 F.3d at 322.

Furthermore, MDG would not be substantially prejudiced if it is precluded from intervening in this action.  In *Shea v. Angulo*, for example, the Seventh Circuit considered the denial of a motion to intervene, where the movant sought to intervene in a breach of contract and quantum meruit action, alleging he and the plaintiff "had an oral partnership agreement that they would split equally all commissions generated by either of them, and that 'at all times relevant' [the plaintiff] was acting on behalf of the partnership."  19 F.3d at 345.  The district court held, and the appellate court affirmed, that "whether or not [the plaintiff] recovers from [the

defendant], [the movant] remain[ed] free to initiate his own suit against [the plaintiff] to recover his share of the alleged partnership earnings." *Id.* at 347.  The same is true here.

Accordingly, given MDG's substantial delay in seeking to intervene and the minimal prejudice it would suffer if its motion is denied, the Court concludes that MDG cannot intervene as a matter of right pursuant to Federal Rule 24(a).  Further, because a motion to intervene pursuant to Federal Rule 24(b) also requires that it be timely filed, the Court similarly determines that MDG should not be permitted to permissively intervene.  *See Sokaogon Chippewa Cmty.*, 214 F.3d at 949 ("The district court denied St. Croix's motion to intervene under Rule 24(b) for a reason that applied with equal force to the motion under Rule 24(a); in each instance, the court found the motion untimely.").  Therefore, MDG's motion to intervene (ECF 90) will be DENIED.

### E.  Conclusion

In summary, R3's motion to supplement its complaint (ECF 81) is DENIED because the proposed supplemental complaint would unduly prejudice G&S.  More specifically, the supplemental complaint is untimely, would substantially delay the case, and would introduce additional complexities and potential juror confusion at trial.  Further, MDG's motion to intervene (ECF 90) is DENIED because the motion is untimely and MDG's interests are adequately represented in this matter by G&S.

SO ORDERED.

Entered this 17th day of February 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge