UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| R3 COMPOSITES CORPORATION, )<br>)<br>Plaintiff/Counter-Defendant, )<br>)<br>v.   )<br>)<br>G&S SALES CORP., )<br>)<br>Defendant/Counter-Plaintiff. ) | CAUSE NO.: 1:16-CV-387-HAB |

## OPINION AND ORDER

The Court is in receipt of Plaintiff, R3 Composites Corp.'s ("R3's") "Notice Regarding Issues that Remain Outstanding and are Ripe for Determination by Summary Judgment" ("the Notice") (ECF No. 112). The Notice was filed subsequent to a telephone conference held on March 23, 2021, wherein the parties advised the Court of their respective positions regarding setting this case for trial following the Seventh Circuit's remand in *R3 Composites Corp. v. G&S Sales Corp.,* 960 F.3d 935 (7th Cir. 2020). (ECF No. 106). In that conference, it was R3's position that there remained nine outstanding issues from the initial summary judgment determination that went unaddressed by the Court. The Notice sets forth eight of those nine issues. For the reasons that follow, the Court concludes that none of the issues in the Notice require a determination from the Court. This case shall proceed to trial as set forth in the Order for Civil Trial entered on March 23, 2021. (ECF No. 107).

## **DISCUSSION**

Familiarity with the underlying facts and procedural history of this case is assumed for purposes of this discussion. It suffices to say that the Seventh Circuit accurately recited the long and short of the parties' dispute in its Opinion remanding the case:

> "R3 and G&S signed a [Non-Disclosure Agreement] contemplating subsequent negotiation of commission rates on particular accounts, with continuing obligations to pay surviving the termination of the agreement. G & S went out and found some business for R3. The two parties in fact negotiated commission rates on that business, and R3 paid G & S some money. G & S thinks R3 owes it more money. R3 thinks it has paid G & S everything it was due. Who is right depends on disputed facts about which customers of R3 paid it how much and on what terms, how much R3 paid in commissions to G & S, and whether G & S agreed to the amounts it actually received."

*R3 Composites Corp..,* 960 F.3d at 944. The sentiment, articulated above, that this case boils down to disputed facts that must be decided by a jury, echoes throughout the Seventh Circuit's opinion and is articulated on no less than five occasions:

- "A reasonable jury could find that the later job-by-job commission agreements were governed by the broader terms of the original written contract. *The rest of the case is rife with factual disputes that cannot be resolved on summary judgment.*" (*Id.* at 937) (emphasis added);

- "We agree in essence with Chief Judge Springmann's original decision (a) that Paragraph 12.2 of the NDA was of course not enforceable standing alone to establish any commission rates, but (b) *that the rest of the case is rife with genuine issues of material fact.*" (*Id.* at 941) (emphasis added);

- One view of the evidence, needed to sustain summary judgment for R3, is that each of those job-by-job agreements stood by itself, independent of the original NDA. Another view of the evidence, argued by G&S, is that the job-by-job commission agreements were exactly what Paragraph 12.2 of the NDA contemplated. Under that view, the NDA acted as an umbrella agreement that supplied generally applicable terms of the parties' agreement (including post-termination commissions), which were adapted to particular customers by the job-by-job agreements. Accordingly*, under the latter view of the case, many factual disputes are material and require a trial.* (*Id.* at 941) (emphasis added).

- "The parties disagree on the percentage G & S was owed on particular accounts, and on the base sales amounts from which the commissions were to be calculated. Much of the dispute hinges not on the particulars of the NDA or the later job-by-job agreements between R3 and G & S, but rather on whether Glidden – the purported managing partner of G & S and simultaneous manager of R3 – had the actual or apparent authority to bind either party or both to modifications as to any particular customers. *The factual resolution of the R3–Aquatic Bath arrangement after 2014 is also highly relevant to the question of whether G & S is owed any additional commission on that account.*" (*Id.* at 945) (emphasis added);

- "It is for the jury to decide under Indiana law the extent of Glidden's authority *and the proper interpretation of any commission agreements* that were negotiated pursuant to the NDA." (*Id.* at 945) (emphasis added).

Despite the Seventh Circuit's clear articulation that this case contains endemic disputes that cannot be resolved on summary judgment, R3 asks the Court to rewind and revisit then-Chief Judge Springmann's original order regarding summary judgment – an order, mind you, that this Court has already revisited once before (ECF No. 68) and ultimately led to the present proceedings upon remand.

During the telephone conference counsel represented that the issues now formally presented in the Notice were not resolved in Judge Springmann's original order. However, this is simply incorrect and neither the Seventh Circuit nor this Court has interpreted the original order in any other way. The Seventh Circuit's opinion recounted the thirteen issues raised in R3's original motion for summary judgment – eight of which reappear in the Notice.[1] The eight that reappear all deal with the various aspects of interpretation of the NDA and R3's commission obligations under the agreement. The Seventh Circuit then specifically recognized that Judge Springmann granted summary judgment on the last of the thirteen issues "but denied it as to the first twelve" and a "trial was needed on all other issues." *R3 Composites,* 960 F.3d at 940. More importantly, there can be no mistaking the language in the original order "…in sum, the Court grants summary judgment in favor of R3 on the issue that the NDA is an unenforceable contract.

---

[1] The ninth issue in the Notice reads: "9. Whether R3 can be liable under the Indiana Sales Commission Act following G & S's termination of Mark Glidden on September 9, 2016 where G & S did not solicit any wholesale orders on R3's behalf after that date because G & S has not sourced any orders, projects, customers, or any business whatsoever, for R3 since before September 9, 2016." This appears to be a new issue as it was not raised in the original summary judgment motion. However, as with the other eight issues whether R3 is liable for failure to pay commissions under the Indiana Sales Commission Act is dependent upon disputed fact issues as to whether, in fact, it was obligated to pay commissions under the job-by-job agreements when read under the umbrella of the NDA.

The Court denies summary judgment on all other issues and claims." *R3 Composites Corp. v. G&S Sales Corp.*, 2019 WL 979565, No. 1:16-cv-00387-TLS (N.D. Ind. Feb. 27, 2019). Thus, it appears clear to this Court that Judge Springmann concluded, as did the Seventh Circuit, that "all other issues" were reserved for the jury.

Setting all that aside, this Court's review of the issues in the Notice, in tandem with the Seventh Circuit's opinion demonstrate precisely why Judge Springmann and the Seventh Circuit ruled as they did. The core of the Seventh Circuit's opinion and ultimate conclusion that a trial is necessary centered around what the Seventh Circuit monikered the "umbrella theory." Essentially, that theory of the case, derived from G & S's view of the evidence, is that the NDA operated as an umbrella agreement for the later negotiated job-by-job commission agreements.  As is abundantly evident from the Seventh Circuit's opinion, questions of fact abound as to the nature and terms of those contracts as well as the conduct of the parties related to those agreements. Indeed, if there is one thing that all the parties agree on in this case, it is that they dispute the interpretation of what was agreed to in the job- by-job commission agreements as informed by the terms in the NDA. As the Seventh Circuit, articulated, "[p]aragraph 12.2 of the NDA was not enforceable by itself, but it could, as that paragraph expressly contemplated, combine with subsequent writings and/or conversations and/or conduct to become enforceable." *R3 Composites Corp,* 960 F.3d at 940. The Seventh Circuit opinion goes on to detail precisely why summary judgment was improvidently granted and reflects that "[i]n interpreting and enforcing contracts here, the law takes into account the parties' actions and pragmatic consequences of their agreements and actions." *Id.* at 944. Here, the parties' actions are front and center in this dispute and a determination cannot be made on the interpretation of the contract terms when a jury is needed to sort out precisely what the parties agreements are, how they operated under those agreements in practice, and how they interpreted

those agreements. Accordingly, as the Seventh Circuit made clear, this case must proceed to trial on the disputed contract interpretations offered by the parties, their respective courses of conduct throughout their commission arrangements, and the terms of the job-by-job commission agreements negotiated by them. The ultimate determination is for the jury to make after it hears the evidence.

## CONCLUSION

On the basis of the foregoing, the Court concludes that none of the issues in the Notice require a judicial determination as both this Court and the Seventh Circuit have concluded that genuine issues of fact exist requiring a trial. This case shall proceed to trial in accordance with the Order for Civil Trial, Final Pretrial Conference and Order Controlling the Case, ECF No. 107.

SO ORDERED on April 8, 2021.

                                        s/ *Holly A. Brady*
                                        JUDGE HOLLY A. BRADY
                                        UNITED STATES DISTRICT COURT